COMMONWEALTH of Pennsylvania,
Appellant,

v.

Henry L. WITHERSPOON, Appellee.

Superior Court of Pennsylvania.

Argued May 17, 2000.

Filed July 3, 2000.

Lisa M. Schlosser, Asst. Dist. Atty., Erie, for Com., appellant.

Joseph P. Burt, Erie, for appellee.

Before KELLY, FORD ELLIOTT and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 This is an appeal by the Commonwealth from the suppression court's order dated October 13, 1999, granting Henry Witherspoon's motion to suppress evidence seized by the Pennsylvania State Police. We reverse and remand for a trial.[1]

¶ 2 When we review the Commonwealth's appeal from the decision of the suppression court, "[we] consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." *Commonwealth v. Nester*, 551 Pa. 157, 709 A.2d 879, 880–81 (1998). "When the evidence supports the suppression court's findings of fact . . ., this Court may reverse only when the legal conclusions drawn from those facts are erroneous." *Commonwealth v. Valentin*, 748 A.2d 711, 713 (Pa.Super.2000).

¶ 3 The suppression court provided a concise restatement of facts:

Defendant was driving a rented vehicle on Interstate 90 on December 7, 1998. The Defendant was from Michigan and was returning from a trip to New York City. The Defendant was stopped by the police for speeding and because the officer stated that Mr. Witherspoon appeared to be underage. After being stopped, it became apparent that the Defendant was legally old enough to drive but was not licensed either in Michigan or elsewhere. The officer issued a citation for driving without a license and then asked the Defendant to consent to a search. The Defendant consented and the vehicle was searched. The police found marijuana in the trunk of the vehicle. Defendant was charged with Possession, Possession With Intent to Deliver, and Possession of drug paraphernalia. The Defendant filed the above motion nunc pro tunc on September 9, 1999. The Court held a hearing on the matter on October 4, 1999.

Trial Court Opinion, 10/13/99, at 1–2 (footnote omitted). Before proceeding, we are compelled to include several facts omitted from the suppression court's factual summary. Appellee was travelling west on Interstate 90 where Trooper Rogers clocked him going 62 mph in a 55 mph zone. *See* N.T. Suppression Hearing, 10/4/99, at 4. Trooper Rogers testified that he stopped appellee due to a combination of speeding and appellee's apparent age. *See id.* at 5. He further testified that during the stop he noticed a contraband copy of "Enemy of the State" in the back window of the car.[2] *See id.* at 7, 9, 25. After issuing appellant a citation for driving without a license, Trooper Rogers returned appellee's identification card and paperwork to him and informed him that he was free to leave. *See id.* at 9, 14, 24. Before appellee could drive away, Trooper Rogers asked him if he would consent to a search of the car. *See id.* at 9. Appellee then signed a consent form. *See id.* at 9–10, 31. Several more troopers arrived at the scene and commenced searching appellee's car. *See id.* at 31–34.

¶ 4 The Commonwealth raises the following issue for our review:

WHETHER THE SUPPRESSION COURT ERRED AND MISAPPLIED THE LAW BY ANALYZING THIS CASE UNDER AN INAPPLICABLE U.S. SUPREME COURT DECISION AND FAILING TO REALIZE THAT THE VOLUNTARY CONSENT TO

---

1. The Commonwealth has certified that the suppression order would substantially handicap or effectively terminate its prosecution of this case. This permits appellate review of the suppression order. *See Commonwealth v. Matis*, 551 Pa. 220, 710 A.2d 12, 17 (1998) (quoting *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382, 386 (1985)); *Commonwealth v. Pitts*, 740 A.2d 726, 732 (Pa.Super.1999).

2. This movie had not yet been released for home viewing at the time of the stop.

SEARCH WAS LEGALLY OBTAINED.

Appellant's Brief, at 4.

¶ 5 The suppression court relied upon the recent United States Supreme Court case *Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), for the proposition that one can never validly consent to having his car searched, subsequent to being stopped for speeding, without reasonable suspicion or probable cause. *See* Trial Court Opinion, 10/13/99, at 3. The court wrote that "[w]hile there was no consent given in *Knowles*, the officer did not need consent as he had statutory consent to search the vehicle. The Supreme Court determined that the statutory consent did not make the search valid and the Court can see no reason to treat the actual consent in this case differently than the statutory consent in *Knowles*." *Id.* at 3. Our reading of *Knowles* leads us to a different conclusion.

¶ 6 In *Knowles*, an Iowa statute permitted a police officer to conduct a full search of an automobile whenever a policeman cited a driver for an infraction of any traffic or motor vehicle code. *See Knowles*, 525 U.S. 113, ——, 119 S.Ct. 484, ——, 142 L.Ed.2d 492, 496–97 (characterizing this as a "search incident to citation"). The Court proceeded to discuss the two constitutionally permissible rationales for conducting a search incident to an arrest: the need to (1) disarm a suspect and (2) preserve evidence for use at trial. *See id.* at ——, 119 S.Ct. at ——, 142 L.Ed.2d at 498. The Court then addressed the inherent differences between placing a suspect under arrest and issuing a citation, and held that the underlying concerns that support searches incident to arrest simply are not present when a police officer issues a citation. *See id.* at ——, 119 S.Ct. at ——, 142 L.Ed.2d at 498–99. Due to the absence of those concerns, the Supreme Court held the Iowa statute unconstitutional. *See id.* at ——, 119 S.Ct. at ——, 142 L.Ed.2d at 499. Our reading of *Knowles*, however, fails to discern any indication that the U.S. Supreme Court has prohibited every search not grounded in either reasonable suspicion or probable cause. As such, *Knowles* is inapplicable to this case and the trial court erred by relying upon it.

¶ 7 Pennsylvania constitutional jurisprudence has developed three distinct types of police-citizen interaction: a mere encounter, an investigative detention, and a custodial detention. *See Commonwealth v. Boswell*, 554 Pa. 275, 721 A.2d 336, 339 (1998) (citing *Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043, 1047–48 (1995)). If the level of interaction exceeds that of a mere encounter, the police must possess either reasonable suspicion or probable cause that the suspect was engaged in criminal activity. *See id.* Our Supreme Court has utilized the following test to assess the level of interaction for particular instances: "a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Commonwealth v. Wilmington*, 729 A.2d 1160, 1172 (Pa.Super.1999) (en banc) (citing *Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). Circumstances to consider include: the number of officers present during the interaction; whether the officer informs the citizen that he is suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. *See Boswell*, 721 A.2d at 340. Therefore, if all of the circumstances indicate that a person understood that he was free to leave and not cooperate, a police officer may engage a citizen in a mere encounter without having a reasonable suspicion of criminal activity. *See Commonwealth v. Vasquez*, 703 A.2d 25, 30 (Pa.Super.1997) (quoting *In re Jermaine*, 399 Pa.Super. 503, 582 A.2d 1058, 1060 (1990) (citing *Terry v.*

**680**

*Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968))).

¶ 8 Undoubtedly, the initial contact between Trooper Rogers and appellee constituted an investigatory detention, which would require a reasonable suspicion that the suspect had violated a law. *See Boswell*, 721 A.2d at 340; *Commonwealth v. Ellis*, 379 Pa.Super. 337, 549 A.2d 1323, 1330 (1988) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439–40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). It is uncontested that Trooper Rogers lawfully detained appellant for exceeding the maximum speed limit, a violation of 75 Pa.C.S.A. § 3361. *See Commonwealth v. Pless*, 451 Pa.Super. 209, 679 A.2d 232, 233 (1996). The question then arises as to whether the police may continue to detain a citizen subsequent to issuing a citation or warning without any other indication that additional crimes were afoot.

¶ 9 Pennsylvania jurisprudence conditions the answer upon whether the police officer first informs the detainee that he or she is free to leave. In *Commonwealth v. Lopez*, 415 Pa.Super. 252, 609 A.2d 177 (1992), prior to returning his license, registration, and car rental agreement, the police continued to question Lopez and finally asked him if he would consent to a search. This Court found that Lopez was not free to leave as he could not do so legally,[3] and held that the continued detention constituted an unreasonable Fourth Amendment seizure. *See id.* at 182; *see also Commonwealth v. Parker*, 422 Pa.Super. 393, 619 A.2d 735 (1993).

■ ¶ 10 The courts, however, have reached an opposite conclusion when the police officer asks the detainee to consent to a search if the officer first returns the detainee's paperwork and informs him that he is free to leave. *See Commonwealth v. Hoak*, 700 A.2d 1263 (Pa.Super.1997) (*en banc*), *aff'd by an equally divided court*, 557 Pa. 496, 734 A.2d 1275 (1999). Whenever the surrounding circumstances indi-

cate that police conduct would have communicated to a reasonable person that he was at liberty to ignore the police presence and go about his business, the investigative detention converts into a mere encounter with all of its attendant consequences. *Commonwealth v. Prosek*, 700 A.2d 1305, 1309 (Pa.Super.1997) (citing *Hoak*, 700 A.2d at 1268). One consequence of a mere encounter is that neither reasonable suspicion nor probable cause is required to foster the contact. As long as the detainee knows that he is not bound to answer the police officer's questions, he may voluntarily consent to a valid search.

■ ¶ 11 In the instant case, the record contains uncontested evidence that Trooper Rogers first returned the paperwork and identification to appellee and informed him that he was free to leave. Appellee then consented to a search of the vehicle that revealed controlled substances. We find that these facts constitute a constitutionally valid search flowing from a mere encounter. Accordingly, the trial court erred in suppressing the evidence.

¶ 12 Order reversed, case remanded for a trial. Jurisdiction relinquished.

---

3. The police still held his paperwork.