J-A01009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANGELINA SULLIVAN | : | No. 757 EDA 2022 |

Appeal from the Order Entered February 11, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001539-2021

BEFORE: LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:               **FILED FEBRUARY 1, 2023**

The Commonwealth appeals from the order of the Court of Common Pleas of Delaware County, which reinstated a previous order to suppress evidence recovered during a vehicle stop of Angelina Sullivan's (Appellee) car. The Commonwealth argues the suppression court erred by finding the detective unlawfully detained Appellee and that her subsequent consent to search her vehicle was involuntary. The Commonwealth also argues the detective did not exceed the scope of Appellee's consent during the search of her vehicle. After review of the record, we affirm, albeit on a different basis than the suppression court.

On December 1, 2017, around 10:30 p.m., Marcus Hook Police Detective Daniel Barnett initiated a traffic stop of a white Toyota due to a broken taillight. N.T. 9/3/21, at 4, 8. After issuing verbal warnings to the occupants — Appellee and Thomas Boscher — related to the traffic stop, the detective

requested permission to search the vehicle. *Id.* at 9-10. Appellee, the owner of the white Toyota, consented to the search and Detective Barnett found, *inter alia*, a makeup bag inside the passenger side glove compartment, which contained two glassine bags of heroin. *Id.* at 10-11, 13. Detective Barnett arrested Appellee for possession of a controlled substance and possession of drug paraphernalia.[1]

Appellee filed an omnibus pre-trial motion seeking, *inter alia*, the suppression of evidence stemming from the traffic stop. Appellee's Omnibus Pre-Trial Motion, 7/21/21, at 1-2 (unpaginated). On September 3, 2021, the suppression court held a hearing regarding the motion where the Commonwealth offered the testimony of Detective Barnett, as summarized below.

Detective Barnett testified that on the day in question, he observed Appellee's vehicle driving with a broken taillight and proceeded to initiate a traffic stop. N.T. 9/3/21, at 8. The detective did not recall whether he asked for a secondary car to assist him, but at some point, Officer Dalrymple[2] arrived on the scene in a second patrol car.[3] *Id.* at 18, 27. When Detective Barnett

---

[1] 35 P.S. §§ 780-113(a)(16), (32). For reasons not explained in the certified record or docket, the matter went dormant for approximately three and a half years.

[2] Officer Dalrymple's first name is not apparent from the record.

[3] Detective Barnett also did not recall at what point during the stop Officer Dalrymple arrived. N.T. 9/3/21, at 18.

approached the car, Boscher was driving and Appellee was in the passenger seat. *Id.* at 8-9. Detective Barnett indicated Boscher did not have a valid driver's license, but Appellee explained that "she was not feeling well" and had asked Boscher to drive. *Id.* at 9. The detective testified that he issued both occupants verbal warnings — Boscher for driving without a license and Appellee for the taillight — and allowed them to "switch positions" in the vehicle. *Id.* He stated he classified the traffic stop as an "unknown risk" stop, meaning he had "no information that led [him] to believe that there was any threat or immediate risk or criminal activity" other than the traffic violation. *Id.* at 19.

After Appellee and Boscher switched positions in the car and put their seatbelts on, Detective Barnett stated he

> told them they were free to leave and they could go. [He] then turned around and started walking back to the patrol vehicle[,] at which point[, the detective] stopped after several steps, came back up to the driver's side, which was where [Appellee] was now seated, and . . . asked her if she would mind if [he] conducted a search of the vehicle.

N.T. 9/3/21, at 10. Further, the detective testified that as a "general rule" during a traffic stop, he "would make it at least halfway back to [his] car and turn around and come back." *Id.* at 30.

Appellee consented to the search. *Id.* 10-11. Detective Barnett testified that he did not tell Appellee what he was searching for or why he wanted to search the vehicle. *Id.* at 31-32. He also stated that at the time he requested permission to search the car, he: (1) did not raise his voice; (2)

could not remember if Officer Dalrymple was standing next to him or on the sidewalk; (3) was not displaying his gun; (4) did not threaten, coerce, or pressure Appellee into consenting to the search; (5) did not "recall" Appellee hesitating when she gave consent; (6) stated Appellee "seemed to understand" what he was saying "throughout [the] incident[;]" and (7) did not suspect Appellee was intoxicated or under the influence of narcotics. *Id.* at 11-12, 24-25.

Detective Barnett then stated that during the search, he found a "zipper makeup bag" inside of the glove compartment. N.T. 9/3/21, at 13. He detailed the makeup bag was made of "solid cloth[,]" did not appear "out of the ordinary[,]" and he did not believe the bag contained a firearm. *Id.* at 33-34. The detective did not specifically ask Appellee if he could search the makeup bag because it was his "belief" that when he asked to search the vehicle, the consent would include "anything within the vehicle, any containers[, and] personal possessions that were . . . not part of it[.]" *Id.* at 32.

Upon opening the makeup bag, he located "two glassine bags" containing heroin. *Id.* at 13. Detective Barnett testified that after searching the makeup bag, he found a "small pill container" containing a "partial piece" of suboxone inside the glove compartment. *See id.* at 15, 35. Detective Barnett also located "smaller ziploc style bags on the floor of the front passenger . . . floor board[,]" but specified the contents of the makeup bag

- 4 -

were "probably the first . . . thing indicative" of criminal activity because he could not remember when he observed the small plastic bags. *Id.* at 35.

On October 28, 2021, the suppression court granted Appellee's motion to suppress the evidence obtained as a result from the vehicle search. Suppression Ct. Op. 10/28/21, at 1.[4]  The Commonwealth filed a motion for reconsideration and on November 30, 2021,[5] the court vacated its suppression order pending the motion.  Order, 11/30/21.  On January 26, 2022,[6] the court denied the Commonwealth's motion for reconsideration.  Order, 1/26/22. Then, on February 11, 2022, the court reinstated its order suppressing the evidence from the traffic stop.  Order, 2/11/22.[7]  The Commonwealth filed the present appeal and timely complied with the court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

_____

[4] In its May 2, 2022, opinion, the trial court adopted the findings of fact, conclusions of law, and discussion in its October 28, 2021, order pertaining to Appellee's suppression motion.  Trial Ct. Op. 5/2/22, at 2.

[5] The suppression court dated its order November 29, 2021, but it was not entered on the docket until November 30th.

[6] The suppression court's order is dated January 25, 2022, but was not entered onto the docket until January 26th.

[7] The February 11th order stated:

> [T]he Commonwealth's Motion for Reconsideration having been DENIED, [Appellee's] Motion to Suppress is hereby GRANTED as outlined in this court's order of October 28, 2021.

Order, 2/11/22.

In its Rule 1925(b) statement, the Commonwealth raised one issue:

[The suppression court] erred by granting [Appellee's] Motion to Suppress the physical evidence recovered and statements made by [Appellee] where [she] consented to the search.

Commonwealth's Concise Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), 4/6/22.

Now, on appeal, the Commonwealth raises the following three claims:

1. Did the suppression court err by misapplying the law and determining that [Appellee] was subject to an illegal investigatory detention and not a lawful mere encounter where the initial traffic stop was completed, the detective was not in possession of [Appellee's] identification or paperwork, and [she] was specifically told she was free to leave?

2. Did the suppression court err in determining that [Appellee's] consent to search her vehicle was not voluntarily given where the consent to search flowed from a lawful mere encounter, was a product of free and unconstrained choice, and was given absent any threat, coercion, or duress?

3. Whether it is objectively reasonable to conclude that the scope of consent to search a car includes a glove compartment and its contents where an individual gives overall consent and does not limit the scope of consent at any time during the search?

Commonwealth's Brief at 3.

Preliminarily, we address Appellee's contention that this Court should quash the Commonwealth's interlocutory appeal as untimely filed. Appellee's Brief at 8. Appellee asserts both that the Commonwealth's appeal is interlocutory and that the 30-day period for the Commonwealth to file a timely appeal began with the suppression court's January 26, 2022, order denying the Commonwealth's motion for reconsideration. *Id.* As such, Appellee contends the Commonwealth's March 11th notice of appeal was untimely. *Id.*

We note that "the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d). Moreover, a notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a).

Here, the suppression court entered its original order granting suppression on October 28, 2021. However, after the Commonwealth filed a motion for reconsideration, the court vacated this order on November 30th.[8] The court then entered an order on January 26, 2022, denying reconsideration. Notably, this order did not reinstate the previous order granting Appellee's suppression motion. **See** Order, 1/26/22. Therefore, on

---

[8] Generally, a trial court has 30 days to modify or rescind an order. 42 Pa.C.S. § 5505. Under Section 5505, the 30-day period to modify the court's grant of Appellee's motion to suppress would have ended on Saturday, November 27, 2021, allowing them until Monday, November 29th to enter the order. **See** 1 Pa.C.S. § 1908 (whenever the last day of a filing period falls on a weekend or on any legal holiday, such day shall be omitted from the computation of time). As noted **supra**, though the court dated the order November 29, 2021, it did not enter its order onto the docket until November 30th, one day after the expiration of the filing period.

However, an order granting a suppression motion is an interlocutory order for which Section 5505 does not apply. **See Commonwealth v. James**, 69 A.3d 180, 185-86 (Pa. 2013) (holding the Commonwealth's ability to appeal an interlocutory order did not transform it into a final order for purposes of Section 5505 and the 30-day period to modify did not apply where the Commonwealth filed a motion for reconsideration and the court now had the authority to revisit its initial ruling). As such, the court was not confined to a 30-day period for modification.

February 11, 2022, the court entered another order wherein it granted the suppression motion. The Commonwealth then filed this appeal on March 11th — less than 30 days later — wherein it asserted the February 11th order "terminate[d] or substantially handicap[ped] the prosecution." Commonwealth's Notice of Appeal, 3/11/22. As such, the present appeal is timely and properly before us. *See* Pa.R.A.P. 903(a); Pa.R.A.P. 311(d).

Turning to the Commonwealth's claims on appeal, we note the relevant standard of review:

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. [Where the defendant] prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Tillery*, 249 A.3d 278, 280 (Pa. Super. 2021) (citations omitted).

Because the Commonwealth's first two claims on appeal are related, we will address them together. In its first claim, the Commonwealth asserts the suppression court erred and misapplied the law where it concluded the second interaction between Detective Barnett and Appellee — after he told the two

occupants they were free to go but then returned to the car and asked for consent to search — was an illegal investigatory detention. Commonwealth's Brief at 11. Instead, it avers this interaction was a mere encounter because (1) Detective Barnett informed Appellee she was free to leave, and (2) he was not in possession of her identification. *Id.* at 14. The Commonwealth suggests that because this interaction was a mere encounter, a reasonable person would have believed they were free to leave and Detective Barnett was free to ask Appellee for consent to search her vehicle. *Id.* at 14, 18.

In the Commonwealth's second claim, it maintains that the second interaction between the detective and Appellee was a mere encounter, and as such, Appellee's consent to search the vehicle was given voluntarily. Commonwealth's Brief at 19. The Commonwealth asserts the following facts support its contention that Appellee provided voluntary consent to the search: (1) the suppression court made specific findings of fact that Detective Barnett did not "threaten, coerce, or pressure" Appellee for her consent, and that the detective advised Appellee she was free to leave; (2) Detective Barnett was "cordial and calm" during both interactions with Appellee; (3) neither officer "displayed their firearms or any additional behavior that could be inferred as authoritative[;]" (4)Detective Barnett only asked for consent to search one time before Appellee agreed; and (5) "there is no evidence in the record to suggest that [Appellee] did not understand" the question. *Id.* at 20-21.

There are three categories of interactions between police and citizens:

The first is a mere encounter, sometimes referred to as a consensual encounter, which does not require the officer to have any suspicion that the citizen is or has been engaged in criminal activity. This interaction also does not compel the citizen to stop or respond to the officer. A mere encounter does not constitute a seizure, as the citizen is free to choose whether to engage with the officer and comply with any requests made or, conversely, to ignore the officer and continue on his or her way.

The second type of interaction, an investigative detention, is a temporary detention of a citizen. This interaction constitutes a seizure of a person, and to be constitutionally valid police must have a reasonable suspicion that criminal activity is afoot.

The third, a custodial detention, is the functional equivalent of an arrest and must be supported by probable cause. . . .

*Commonwealth v. Adams*, 205 A.3d 1195, 1199-1200 (Pa. 2019) (citations omitted & paragraph breaks added). When determining whether a seizure amounting to an investigatory detention has occurred, we look at whether a reasonable person would have felt free to leave. This test

requires the court to determine "whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" "[W]henever a police detective accosts an individual and restrains his freedom to walk away, he has 'seized' that person."

*Id.* at 1200 (citations omitted). Further, in defining whether an interaction is a mere encounter or an investigatory detention, "express admonition . . . that the citizen-subject is free to depart is a potent, objective factor" favoring a mere encounter. *Commonwealth v. Strickler*, 757 A.2d 884, 899 (Pa. 2000) (footnote omitted).

Regarding voluntary consent, this Court has stated:

The Commonwealth bears the burden of proving that the defendant consented to a warrantless search. To establish a voluntary consensual search, the Commonwealth must prove "that a consent is the product of an essentially free and unconstrained choice — not the result of duress or coercion, express or implied, or a will overborne — under the totality of the circumstances."

**Commonwealth v. Randolph**, 151 A.3d 170, 179 (Pa. Super. 2016) (citation omitted).

In support of its first two arguments, the Commonwealth relies upon, *inter alia*, **Commonwealth v. Witherspoon**, 756 A.2d 677 (Pa. Super. 2000). In **Witherspoon**, a police officer initiated a valid traffic stop of the defendant. **Witherspoon**, 756 A.2d at 678. After issuing a citation, the officer returned the defendant's identification and paperwork and informed him that he was free to leave. **Id.** The officer then asked the defendant for permission to search the vehicle, and he agreed. **Id.** Upon searching, the officer located marijuana in the trunk of the car and arrested the defendant. **Id.**

The defendant then filed a motion to suppress the evidence, which the trial court granted, reasoning "one can never validly consent to having his car searched, subsequent to being stopped for speeding, without reasonable suspicion or probable cause." **Witherspoon**, 756 A.2d at 679. The Commonwealth appealed to this Court, arguing the officer legally obtained voluntary consent to search the defendant's vehicle. **Id.** at 678-79. This Court reversed the trial court's order, concluding that while the initial traffic stop was a valid investigatory detention, the officer ended that interaction

- 11 -

when he returned the defendant's paperwork and told him he was free to leave. *Id.* at 680. This Court stated that though the encounter began as an investigatory detention, it converted into a mere encounter by the officer's actions. Specifically, this Court noted:

> Whenever the surrounding circumstances indicate that police conduct would have communicated to a reasonable person that he was at liberty to ignore the police presence and go about his business, the investigative detention converts into a mere encounter with all of its attendant consequences. One consequence of a mere encounter is that neither reasonable suspicion nor probable cause is required to foster the contact. As long as the detainee knows that he is not bound to answer the police detective 's questions, he may voluntarily consent to a valid search.

*Id.* (citation omitted). We conclude that the present facts are substantially similar to **Witherspoon**, and therefore, it is controlling.

In the present case, the suppression court determined Detective Barnett's subsequent interaction with Appellee was an unlawful investigatory detention, and as such the consent to search her car was involuntary. Suppression Ct. Op. at 6-7. Specifically, it opined:

> The evidence is uncontradicted that the purpose of the traffic stop . . . was concluded when Detective Barnett re-approached the vehicle and asked [Appellee] if she would consent to a vehicle search. Since she had just been detained, it is reasonable that [Appellee] believed she was still being detained at the time her consent . . . was requested. . . .

*Id.* at 6. The court also made specific findings of fact that: (1) the detective informed Appellee she was free to leave; (2) Detective Barnett began to walk away, then after "several steps" came back to the vehicle to request consent

- 12 -

to search; (3) when asking for consent to search, the detective did not threaten, coerce, or pressure Appellee; (4) and Appellee consented to the search. **Id.** at 2. To the extent that the court concluded Detective Barnett initiated an investigatory detention and Appellee's consent was not voluntary, we disagree, pursuant to **Witherspoon**, *supra*.

Here, the detective issued Appellee and Boscher verbal warnings and informed them that they were free to go. Appellee and Boscher then put their seatbelts on, presumably preparing to leave, and Detective Barnett began to walk away. **See** N.T. 9/3/21, at 10. The detective decided to return to Appellee's car and requested permission to search. As pointed out by the suppression court, Detective Barnett did not raise his voice, did not threaten Appellee, and did not show his gun during the interaction. **Id.** at 11-12; Suppression Ct. Op. at 2. As these specific findings are supported by the record, the totality of the circumstances does not support a conclusion that the second interaction constituted an investigatory detention, and therefore, we conclude the suppression court erred. **See Witherspoon**, 756 A.2d at 680 (finding investigatory detention ended when officer retuned paperwork and told the defendant he was free to leave and therefore, investigatory detention becomes a mere encounter where surrounding circumstances would communicate to a reasonable person that they were free to leave); **Strickler**,

- 13 -

757 A.2d at 899 (express admonition that one may leave favors a determination that an interaction is a mere encounter).[9]

Since we conclude the interaction between Appellee and Officer Barnett was a mere encounter, it follows that a reasonable person would believe they were free to terminate the contact and drive away. *See Adams*, 205 A.3d at 1200. Further, the encounter did not amount to a seizure when the detective did not threaten, coerce, or pressure Appellee into giving him consent to search the vehicle. Therefore, her acquiescence was voluntary. *See Randolph*, 151 A.3d at 179.

_____

[9] Though the specific circumstances are not entirely analogous with the present matter, we also note the holding in *Commonwealth v. Freeman*, 757 A.2d 903 (Pa. 2000). In *Freeman*, the Court determined a prior seizure, resulting from a valid traffic stop, ended when the officer returned the defendant's paperwork, issued a traffic citation, and informed the defendant she was free to go. *Freeman*, 757 A.2d at 907. However, the Court ultimately concluded the officer's subsequent interaction with the defendant was an unlawful seizure. *Id.* at 909. Specifically it stated that "the prior detention d[id] not, in and of itself, convert the subsequent encounter into a seizure[,]" but the officer's "subsequent actions were inconsistent with his statement to [the defendant] that she was free to leave," when he: (1) returned to her vehicle; (2) continued to question her about the traffic violation; (3) pointed out her inconsistent statements about the surrounding circumstances of the stop; and (4) "ultimately and most significantly, asked her to step out of the vehicle prior to the request for consent. Such directive constituted a greater show of authority than had previously been made (other than the physical stop of [the] vehicle itself)." *Id.* at 907.

Similarly to *Freeman*, the traffic stop here ended when Detective Barnett informed Appellee she was free to go and walked away from her vehicle. However, unlike *Freeman*, the detective here made no "greater show of authority" during their subsequent encounter where he asked Appellee for consent to search without any further questioning and without directing her to leave the vehicle. *See Freeman*, 757 A.2d at 907.

- 14 -

For the above reasons, we agree with the Commonwealth on its first two arguments. Nevertheless, we conclude no relief is due. In its third claim, the Commonwealth argues the makeup bag containing the heroin was within the scope of Appellee's consent to search the vehicle. Commonwealth's Brief at 22. The Commonwealth contends "any reasonable person would assume that an unlocked glove compartment and the larger bags contained therein would be a routine part of a vehicle search" and that Appellee did not limit or revoke her consent to search. *Id.*

The Commonwealth also asserts this claim was not addressed by the suppression court. Commonwealth Brief at 22. It states that despite the court's "lack" of analysis on the issue, the record demonstrates that Appellee did not revoke or limit the consent to search. *Id.* at 23. The suppression court did not address this argument because the Commonwealth failed to preserve it in its court-ordered Rule 1925(b) statement. As mentioned above, the Commonwealth raised only a question as to whether the Appellee consented, not the scope of her consent. *See* Commonwealth's Concise Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), 4/6/22. It is well-settled that when a party fails to rise a claim in its court-ordered Rule 1925(b) statement, that issue is waived. *See* Pa.R.A.P. 1925(b)(4)(vii) (failure to raise a claim in a Rule 1925(b) statement results in waiver); *Commonwealth v. Edwards*, 874 A.2d 1192, 1195-96 (Pa. Super. 2005) (Commonwealth's failure to challenge reasonableness of defendant's expectation of privacy in Rule 1925(b) statement waived issue on appeal); We

also note the Commonwealth did not argue the claim was properly preserved in its brief.  Accordingly, we find the Commonwealth's final claim is waived.[10]

However, even if the argument were properly preserved, we would conclude that the claim was unavailing. Where voluntary consent to search is lawfully obtained, the scope of that search "must be conducted within the scope of that consent." *Commonwealth v. Valdivia*, 195 A.3d 855, 862 (Pa. 2018).  We measure the scope of consent by the "objective reasonableness" of what a person in that position believes they are allowing by consenting.  *Id.* at 862, 865 (citations omitted).  The Pennsylvania Supreme Court has stated:

> While an individual may place limits on the scope of any consent given, or revoke consent altogether, the failure to do so does not modify the consent to the search that was given, nor does it give police carte blanche to conduct a search of limitless scope and duration.
>
> **The scope of a search is controlled by the scope of consent given, which, in turn, is determined pursuant to a reasonable person standard under the circumstances at the time the exchange between the officer and the suspect occurs.  The burden is on law enforcement officials to conduct a search within those parameters.**  An individual is not required to police the police; absent another exception to the warrant requirement, when a search exceeds the scope of an individual's given consent, the search is illegal regardless of whether the individual objected or revoked his or her consent. *See generally* 68 Am. Jur. 2d *Searches and Seizures* § 271 ("A **general consent** to a search on its own does **not give an officer unfettered search authority**. Even when an individual gives a

---

[10] Even though the suppression court did not address the Commonwealth's third claim, we may affirm on any basis.  *See Commonwealth v. Venable*, 200 A.3d 490, 499-500 n.6 (Pa. Super. 2018) (this Court may affirm a trial court's order on any basis).

- 16 -

general consent without express limitations, the scope of a permissible search has limits: it is constrained by the bounds of reasonableness and what the reasonable person would expect.").

*Id.* at 868 (emphases added).

In the present matter, Detective Barnett asked Appellee for general consent to search her vehicle. At the suppression hearing, he stated he did not ask to extend the search beyond the general vehicle, and he did not say what he was searching for or why he requested to search the car. N.T. 9/3/21, at 31-32. While the detective may have had a personal belief that this consent included "anything within [the] vehicle, any containers[, and] personal possessions that were . . . not part of it[,]" it is our determination that "objective reasonableness" would not lend itself to this conclusion. *See Valdivia*, 195 A.3d at 862; *see also* N.T. 9/3/21, at 32. He opened an innocuous looking makeup bag that was found inside of a glove compartment with no indication that he would find anything criminal inside to lend itself to justify searching the contents. Based on the facts before us, a reasonable person in this situation — a traffic stop where there is no suspicion of criminal activity and the officer only issued a verbal warning — would not assume that consent to search their vehicle included a solid cloth "zipper makeup bag" inside of the closed glove compartment. *See Valdivia*, 195 A.3d at 868 (failure to limit or revoke consent does not allow an officer carte balance to a limitless search); N.T. 9/3/21, at 13, 33-34. Appellee gave general consent

to search her vehicle, but the detective's search exceeded the scope of that consent.[11]

Moreover, we note the cases the Commonwealth cites in support of its argument do not apply to the present facts, and therefore are not persuasive. *See Commonwealth v. Sewell*, 2019 WL 7290507 (Pa. Super. Dec. 30, 2019) (unpub. memo.) (motion to suppress properly denied where the defendant did not limit consent and the officers found a gun immediately visible upon opening the vehicle's glove compartment); *Commonwealth v. Roberts*, 2013 WL 11255589 (Pa. Super. Sept. 26, 2013) (unpub. memo.) (search did not exceed scope of consent where officers asked to search the vehicle based on the smell of marijuana and it is reasonable that marijuana could be found in a purse); *Commonwealth v. Yedinak*, 676 A.2d 1217 (Pa. Super. 1996) (affirming the denial of a suppression motion where officers informed the defendant, they wanted to search his car for drugs and he consented, thereby allowing the officers to search anything within the vehicle that could conceivably hold drugs); *Fla. V. Jimeno*, 111 S. Ct. 1801 (1991)

---

[11] We note the pill bottle that the officer found inside of Appellee's unlocked glove compartment falls under the scope of general consent. *See Valdivia*, 195 A.3d at 862.  However, in its appellate brief, the Commonwealth does not present any argument suggesting the trial court erred in suppressing this evidence, instead focusing solely on protesting the suppression of the makeup bag.  Because the Commonwealth failed to put forth any assertion concerning the suppression of the pill bottle, this claim would have also been waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Gibbs*, 981 A.2d 274. 284 (Pa. Super. 2009) (concluding that where an appellant does not develop an argument on appeal, that claim is waived).

(holding where an officer informs a defendant they want to search a vehicle for narcotics and the defendant consented, it is reasonable to assume the scope of that consent would include containers that could contain narcotics). Accordingly, even if the Commonwealth had preserved this claim, it would have no merit. Therefore, the evidence obtained as a result of the search was properly suppressed.

Order affirmed.

Judge Lazarus joins the Memorandum.

Judge Nichols Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/01/2023